### THE POINT REYES.
### No. 227.

District Court, E. D. Louisiana.
July 10, 1939.

W. J. & H. W. Waguespack (by Herbert W. Waguespack), of New Orleans, La., for libelants.

Terriberry, Young, Rault & Carroll (by Benjamin W. Yancey), of New Orleans, La., for respondent.

BORAH, District Judge.

This is a libel in rem by former members of the crew of the steamship Point Reyes, seeking to recover the bonus money which they allege is due under their contract of employment.

Libelants signed shipping articles aboard the steamship Point Reyes, owned by Swayne & Hoyt, Ltd., at San Francisco, California, on December 3, 1935, for a voyage to the Gulf and return. These articles had the following rider attached: "In the event this vessel enters any Gulf port where a maritime strike is in effect each member of the crew shall be paid $50.00 in addition to all wages and overtime due them, less proper deductions up to the time the crew leaves the vessel." This rider was inserted in the shipping articles at the crew's request because of their knowledge that there was definitely a strike existing against Swayne & Hoyt, Ltd., at New Orleans. On December 3, 1935, when the crew signed shipping articles, Swayne & Hoyt, Ltd., had a contract on the west coast with the International Longshoremen's Association and at the same time in New Orleans they had a contract with the Independent Longshoremen's Association. However, on December 12, 1936, they entered into a contract with the International Longshoremen's Association covering work at the port of New Orleans.

Before leaving San Francisco the officials of the International Seamen's Union told libelants they were to leave the ship at New Orleans unless they received further word from them that the strike had been settled. With the libelants aboard, the vessel proceeded on her voyage to the Gulf arriving at the port of New Orleans on December 26, 1935. On the day of her arrival and on the following day as well there was in existence no labor difficulties of any character in any way involving the Point Reyes or her owners, or in any way affecting the crew or their safety.

Prior to the year 1923 various steamship interests in the port of New Orleans had contracts with the two locals of the International Longshoremen's Association. In 1923 these contracts were not renewed and the various steamship interests began and thereafter continued to load and discharge their vessels with their own independent longshore employees. Shortly thereafter two companies operating Shipping Board vessels, made contracts with the two locals of the International Longshoremen's Association, which contracts expired in 1931 and were not renewed. At that time these two lines began and thereafter continued to load and discharge their vessels with their own independent longshore employees. With the exception of those two lines, and of Swayne & Hoyt, Ltd., and Luckenbach Gulf Steamship Company, Inc., the locals of the International Longshoremen's Association had done no

274

work for any steamship interests in the port of New Orleans since 1923. The locals of the International Longshoremen's Association had done no work for those lines since 1931. This situation was described on the witness stand by the president of the white local of the International Longshoremen's Association as a "lockout".

On September 30, 1935, the two locals of the International Longshoremen's Association proclaimed what they called a "strike" to begin October 1, 1935. No employees of any of the steamship interests in New Orleans obeyed this so-called strike. The regular employees reported for work and the loading and discharging of all vessels in the port continued with the regular employees without delay or interruption. The so-called "strike" was merely an effort on the part of a group which had done no maritime work in the port of New Orleans since 1923, with the exceptions above mentioned, to force the steamship interests to make a contract with it. These efforts took the shape of sporadic outbursts of violence against the regular river front employees to intimidate them from proceeding with their regular work. They were unsuccessful and after a few days they died out.

The original interpretation put on the rider of the shipping articles of the Point Reyes by both parties was that the rider did not come into effect unless there was a maritime strike involving the owners of the Point Reyes. There was no such strike in existence on December 26 and 27, 1935. Failing to receive any word from the accredited representatives of the International Seamen's Union that the strike had been settled, the libelants chose to interpret the maritime labor conditions in New Orleans as constituting a maritime strike, and accordingly insisted on leaving the vessel and being paid the $50 bonus, in addition to their earned wages. The master and owners of the Point Reyes refused to pay the $50 bonus. The libelants thereupon, on December 27, 1935, signed off the vessel, being each paid all of his earned wages, with the reservation of his right to make claim for the $50 bonus.

The labor conditions in the port of New Orleans in the late fall and early winter of 1935, and at the times involved in this libel, did not constitute a strike. There was no maritime strike in effect in New Orleans on December 26 and 27, 1935.

The condition contemplated by the rider to the shipping articles of the Point Reyes not existing, the libelants are not entitled to the $50 bonus each.

The libelants having been paid all of their earned wages and no maritime strike being in effect in New Orleans, they cannot recover on the facts and matters set forth in the libel.

A decree may accordingly be entered in favor of the claimant dismissing the libel with costs.